WESTERN ELECTRIC CO. v. GALESBURG UNION TELEPHONE CO. et al.

(Circuit Court, N. D. Illinois, S. D.    February 14, 1905.)

PATENTS—DOUBLE PATENTING—TELEPHONE SWITCHBOARDS.

The Scribner patent, No. 669,708, for apparatus for telephone switch-boards, consisting essentially of a "visible test" system for indicating automatically whether a particular line is open or busy by means of electric lamps, discloses invention, although of narrow scope in view of the prior art, but is void for double patenting; patent No. 574,006, to the same patentee, applied for later, but granted prior to No. 669,708, although claimed to be for a "combination" of an audible and a visible test system of signals, disclosing the device of the later patent in its entirety, with neither elements nor functions modified or changed by the added feature for audible test.  Also *held* not infringed, if conceded validity.

In Equity.    On final hearing.
Affirmed on appeal, 144 Fed. 684.

This bill is for alleged infringement of letters patent No. 669,708, issued March 12, 1901 (on application filed February 28, 1895), to Charles E. Scribner, for "apparatus for telephone switchboards." The complainant is the owner of this patent, and manufactures and installs telephone switchboards, and has the invention in question embodied in several exchanges. The defendant Galesburg Union Telephone Company is a local exchange at Galesburg, Ill., and employs a form of signaling apparatus which is alleged to embody the patent invention. The specifications of the patent state that the "invention relates to the signaling and testing appliances of telephone switchboards," and then describes the invention in general terms as follows: "It comprises two cooperative features which concern, respectively, the transmission of signals from the substation of a telephone line to the telephone switchboard and the indication of the free or 'busy' condition of a line to an operator making connection with it. The objects of the first-mentioned feature are to effect the transmission of the signals for connection and disconnection at the telephone switchboard automatically in the use of the substation apparatus and to efface the call signal and substitute for this signaling instrument a different signaling device adapted to respond to the signal for disconnection. The object of the second feature is to indicate automatically to an operator establishing connection with a line at any section of the switchboard whether the line be free for use or not, in order that she may not interfere with a connection already existing."

The patent as issued contains seventeen claims, but infringement is predicated on four of these claims, the sixth, seventh, eighth, and eleventh, reading as follows:

"(6) The combination, with a telephone line, of a relay responding to currents in the line, a local circuit including a source of current, a resistance-coil, and a line-signal lamp, controlled by the relay, the line-signal being associated with a spring-jack of the line, a connecting-plug for use with the spring-jack, a clearing-out signal lamp associated with the connecting-plug, and switch-contacts adapted to close a shunt-circuit through the clearing-out signal lamp about the line-signal lamp and the contact-points of the relay when the plug is inserted into the spring-jack, substantially as described.

"(7) The combination with a telephone line, provided with a switch at the substation for closing the line-circuit while the telephone is in use, of a relay and a source of current in the line at the central station, a spring-jack connected with the line, a line-signal lamp associated with the spring-jack, a local circuit controlled by the relay including the line-signal lamp, a branch from one terminal of the signal-lamp to an insulated contact-piece in the spring-jack, a plug for making connection with the line, a conductor terminating in a contact piece in the plug adapted to register with the said insulated contact-piece in the spring-jack, forming the terminal of a conductor including a clearing-out signal lamp and connected with the remaining terminal of the signal-line lamp, substantially as described.

"(8) In combination, two telephone lines, each terminating in a spring-jack and each including a relay and a source of current adapted to respond to current in the line during the use of the substation instruments, a connecting-plug in each spring-jack, a device in each plug-circuit for permitting the transmission of telephonic current therein but preventing the passage of continuous current from one plug to the other, a line-signal associated with the spring-jack of each line, and a clearing-out signal associated with each connecting-plug, the line-signal of one line and the corresponding clearing-out signal being in parallel branches of a local circuit, the conductor including each line-signal being controlled by the corresponding line-relay, whereby clearing-out signals are substituted for the line signals and currents in the different lines are caused to give independent signals."

"(11) In a testing device for multiple switchboards, the combination with test-contacts in the different spring-jacks of a line, of a source of current permanently connected through a resistance-coil with the test-contacts, a connecting-plug, and a contact-piece therein adapted to register with said test-contacts and forming the terminal of a conductor connected with the free pole of said battery, another connecting-plug and a similar contact-piece therein, a signal-lamp in the conductor terminating in the said contact-piece, said lamp being adapted to be illuminated by the full current through the resistance-coil, whereby the presence of the existing connection is automatically indicated when the last-mentioned connecting-plug is inserted into the spring-jack."

Edward Rector, George P. Barton and De Witt C. Tanner, for appellant.

Charles A. Brown, for appellees.

SEAMAN, District Judge (after stating the facts). The great invention of the telephone was disclosed to the world within the past 30 years, but the devices for improvement in its use have so multiplied that thousands of patents have issued in this special art. For the development of usefulness in the present-day telephone exchange the value of the leading inventions in switchboards and signals cannot be overestimated, and the patents therefor may justly be entitled to liberal construction in so far as they pioneer the way for new and better uses in the new art. The improver, however, cannot be granted monopoly of well-known means and uses to bar others from the full benefit of pre-existing art. Hence the limitations which must be observed in the construction of patents, in so far as the means and uses are within the prior art. Each patent must rest on the character of the invention it discloses, in the light of the art—upon its merits alone—and for its interpretation the court can give no heed to suggestions which were made in this argument upon one and the other sides, either of many meritorious inventions by the patentee, or of the alleged monopolistic contract under which the complainant operates.

The patent in suit—No. 669,708, granted March 12, 1901—is one of a series of three patents granted to Scribner, on applications, respectively, in February and July, 1895, all relating to a signaling system for the telephone exchange. The first application resulted in patent No. 548,228, October 22, 1895, and is described in the brief for complainant as "the audible test system." The second, filed the same day as the first, is described as "the visible test system," but was not allowed until March 12, 1901, and is No. 669,708 in controversy. The third application, July 5, 1895 (as thus mentioned), "illustrated and described both systems, and claimed only the combination of the

two," and patent issued thereupon as No. 574,006, December 29, 1896. The other patents for signaling and exchange systems—No. 559,411, issued to Scribner and McBerty, May 5, 1896, on application of February 28, 1895, and No. 559,616, issued to Scribner May 5, 1896, on application filed January 8, 1895—are pertinent references in the briefs, the first mentioned being the patent in issue before Judge Hazel in the so-called "Rochester Case." The state of the art in signaling devices is disclosed in other patents in the record. Three defenses are urged: (1) Want of patentable novelty; (2) double patenting, on reference to No. 574,006; (3) noninfringement. The extended and interesting oral arguments and illustrations impressed me with the view that neither of these contentions on behalf of the defendant could be set aside as entirely without force, and that in any aspect of the evidence the scope of invention was narrowed so that infringement could not be found in the defendants' signaling means and system. Since the hearing I have not only read the elaborate printed arguments of counsel and much of the discussion by the experts, but have given particular re-examinations, as intervals of time have afforded opportunity, to the propositions and authorities discussed in both briefs on behalf of the complainant, and am sure that the various contentions have received consideration. My conclusions, however, will be stated without the extended discussion which an interesting case well presented would seem to justify, if time were available.

1. Upon the first defense of patentable novelty (apart from the question of double patenting), I am satisfied that sufficient invention appears to sustain the patent, though narrow in its scope. While it is true that Scribner and other inventors had theretofore furnished supervisory signals in the art which closely approached that of the patent in means and result, none at the date of the application were clear anticipations; and the simplicity of the signal-relay means and system disclosed by the patentee, as now viewed in the light of the earlier contributions, cannot serve to relegate this useful improvement to the bourn of "mere mechanical skill." Nor do I find the contention of inoperativeness tenable.

2. The second ground of defense is not free from difficulty in its solution under the authorities, but I am of opinion that the patent in suit cannot be upheld under the rule against double patenting, as exemplified in Miller v. Eagle Manuf. Co., 151 U. S. 186, 196, 14 Sup. Ct. 310, 38 L. Ed. 121, and cases there cited. As before mentioned, this singular condition arises out of the division of applications by the inventor and their allowance in reverse order by the Patent Office. One application was directed to the "audible test system," and another of like date to the "visible test system," while a third was filed four months later for a purported "combination of the two systems." The last-mentioned application for the so-called combinations, which described and covered fully the "visible test system" of the patent in suit, resulted in a patent (No. 574,006) which antedates some four years the "visible test" grant in patent No. 669,708. Can the later patent be upheld under such circumstances, when the specifications

and claims of the earlier patent are fairly analyzed? The rule against double patenting has long been recognized as inherent in the statutory authority for the grant, so that the invention disclosed by the applicant and embodied in the grant cannot be split up to thus obtain benefits therein beyond a single patent. Difficulty arises in the application of the doctrine, both through the divisional methods which have prevailed in the Patent Office and through the various definitions of the test of double patenting in the reported cases. I have examined the authorities cited in the reply brief of complainant upon this point, and the general line as well; and, while the question is interesting, review of their definitions and distinctions when applied to the unmistakable import of these patents is deemed unnecessary. As remarked in Miller v. Eagle Mfg. Co., 151 U. S. 201, 14 Sup. Ct. 316, 38 L. Ed. 121:

"It is not the result, effect, or purpose to be accomplished which constitutes invention, or entitles a party to a patent, but the mechanical means or instrumentalities by which the object sought is to be attained."

So the means and system embodied in the instant patent are identical with those shown and embodied in No. 574,006, aside from the additional circuit provided in the latter to make the "audible busy test" of the earlier patent. The fact that the specifications of No. 574,006 refer to the prior applications and state that the "present invention" has "effected a combination of these two test systems, making a composite test system which possesses special advantages," and that the patent is termed in the discussion a combination patent, is not determinative. Association of the alleged two test inventions in one is not per se another invention, and the name assumed for the system in the application cannot make it a true combination. The means and system of the patent in suit are plainly embodied as an entirety in No. 574,006, with neither elements nor functions modified or changed by the added feature for audible test; and I am constrained to the view that invention therein rests alone on the means for visible test. So considered, the invention disclosed is single, not separable, and none of the authorities referred to sanction a second grant of monopoly.

3. If, however, the foregoing view of the invalidity of the patent is erroneous, I am satisfied that the defense of noninfringement is well asserted, under the interpretation which must be given to the claims of the patent. The signaling and tests in the prior art had progressed to the extent of furnishing both audible and visible tests at the telephone exchange prior to the invention in controversy, and by means closely approaching it, plainly appears. The broad construction for the system of the patent which is claimed in support of the charge of infringement would bar means and uses which were clearly within the rights of the public when this inventor entered upon the improvement. Of course, the claims cannot be thus construed. As before stated the invention is of narrow scope, however beneficial for exchange operation, and must be limited accordingly so that the prior art remains free. The patent thus described the invention:

"My invention consists in arranging two such signals in parallel branches of a local circuit and in controlling the continuity of one of the branches by a

relay responding to currents in the telephone line. The signal in the branch controlled by the relay is designed to act as an individual signal and is permanently associated with a particular line. The other signal may be associated with one of the plug-circuits provided for uniting different telephone-lines, and the branch including it may be normally open, terminating in a contact-piece in the connecting-plug adapted to complete the branch while the plug is in use in a spring-jack."

The feature of the structure in which invention is found, in my understanding of it, is the introduction of the resistance coil, m, for its special function in the system—well known in the general art for like effect, but novel in this application for telephone signaling. As described in the brief for complainant it is "of such character as to limit the flow of current through the circuit, permitting a sufficient amount to flow to illuminate the lamp, but not sufficient to illuminate it if the flow of current be materially reduced." Thus signal lamps identical in kind—supervisory and line—are controlled and reciprocally control each other. When one lamp is alone connected in circuit the current will light it; but, when both are connected, in parallel both are extinguished, as the distributed current is then insufficient to light them—a resultant being the desirable so-called "visual busy test" of the patent. While the general shunting effect was old, the particular arrangement and shunting effect of one lamp on the other was novel. I am satisfied that this feature is absent from and foreign to the defendant's system and structure. While two resistance coils are used therein, they have a different function in the system; and the introduction of a resistance means by the patentee cannot exclude other uses of that well-known provision in the art. The supervisory lamp is not lighted by the opening of the line lamp circuit, and the lamps do not reciprocally control each other. The means set forth in the patent, which is the sole feature of novelty in the combination, is not thus used in the defendants' device for the control of the supervisory signal; nor does the defendants' structure furnish the "visual busy test" which is the distinguishing feature of the patent over the prior art. It was well demonstrated at the hearing, if not clear from the nature of the elements, that the supervisory lamp of the defendants' device was not adapted to be lighted by the full current through the resistance there provided, and was not so lighted. In other words, the particular function of the patentee's resistance coil is not performed by the resistance used by the defendants, and is not within the purview of its structure or system. The contention that the visual busy test was not only obtainable therein, but was in fact used in the operation of the defendants' exchange, is, in my opinion, not established by the testimony introduced to that end, and is inconsistent (for practical purposes) with the demonstrations and recognized principles of the structure.

Other and minor features of difference do not require mention, as the distinctions referred to are deemed sufficient. Analysis of the systems, respectively, is deemed unnecessary for this summary of views.

Decree will follow dismissing the bill for want of equity.